[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 14, 2007
THOMAS K. KAHN
CLERK

No. 05-17200
Non-Argument Calendar
_____

D. C. Docket No. 04-00189-CR-T-17-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VICENTE ZARABIA,
a.k.a. Vicente Zarabia-MiDueno,
a.k.a. Manuel Acosta DeJesus,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 14, 2007)**

Before ANDERSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Vicente Zarabia appeals his 77-month sentence imposed on resentencing after his conviction for illegal re-entry into the United States, in violation of 8 U.S.C. § 1326(a), (b)(2). On appeal, Zarabia argues that the district court erred by (1) improperly calculating his criminal history score; (2) imposing sentence without giving him an opportunity for allocution; and (3) imposing an unreasonable sentence. After review, we affirm.

## I. BACKGROUND

On December 10, 1997, Zarabia, who is a citizen of Mexico, was convicted in the United States District Court for the Southern District of Texas of transporting a certain alien within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) (Zarabia's "alien smuggling offense"). Zarabia was sentenced to 200 days' imprisonment and 3 years' supervised release. On March 16, 1998, Zarabia was released from imprisonment. As a result of this alien smuggling conviction, Zarabia was deported to Mexico in May 1998.

Thereafter, Zarabia returned to the United States without permission, and on July 10, 1999, was arrested in Georgia for driving without a license, driving under the influence of alcohol, and endangering a child while driving under the influence of alcohol. Thus, Zarabia was illegally back in the United States at least by the time of his Georgia arrest on July 10, 1999, which was within two years of his

March 16, 1998 release from imprisonment in Texas.

On April 14, 2004, a special agent of the Bureau of Immigration and Customs Enforcement located Zarabia in a Florida jail, where he was being held on unrelated state charges. As a result, Zarabia was indicted for being found in the United States without permission after previously having been convicted of a felony offense and deported to Mexico, in violation of 8 U.S.C. § 1326(a), (b)(2). Zarabia pled guilty to the indictment without a plea agreement.

The presentence investigation report ("PSI") recommended a total offense level of 21, calculated as follows: (1) a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a); (2) a 16-level enhancement, pursuant to § 2L1.2(b)(1)(A)(vii), because Zarabia was deported after a conviction for an alien smuggling offense; and (3) a 3-level reduction, pursuant to § 3E1.1, for acceptance of responsibility. The PSI calculated 13 criminal history points for a criminal history category of VI, as follows: (1) 10 points for Zarabia's previous convictions; (2) 2 points, pursuant to § 4A1.1(d), because Zarabia committed the instant offense while on supervised release for his alien smuggling offense; and (3) 1 point, pursuant to § 4A1.1(e), because Zarabia "committed the instant offense, which began on July 10, 1999, less than two years following his release from custody on March 16, 1998," for his alien smuggling offense. Zarabia's total offense level of

3

21 and criminal history category of VI resulted in a guidelines range of 77 to 96 months.

## A. First Sentencing Hearing and Appeal

At the first sentencing hearing, held on January 7, 2005, Zarabia objected to the 16-level enhancement to his offense level based on Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). The district court overruled the objection based on then-current Eleventh Circuit precedent. Zarabia did not object to the additional two criminal history points for committing the instant illegal re-entry offense while on supervised release, or to the one criminal history point for committing the instant offense less than two years after his release from imprisonment.[1] After adopting the undisputed factual statements and guidelines calculations, the district court sentenced Zarabia to 77 months' imprisonment.

In his first appeal, Zarabia argued, in light of Blakely and United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), that the district court violated his Sixth Amendment rights by sentencing him based upon a prior conviction for alien smuggling that he did not admit, and by sentencing him under a mandatory guidelines scheme. This Court concluded that the district court did not violate

---

[1]Zarabia did raise an unrelated objection to his criminal history calculation. The district court sustained the objection, which did not alter Zarabia's criminal history score and has no bearing on this second appeal.

4

Zarabia's Sixth Amendment rights by enhancing his sentence based upon a prior conviction, but that the district court did commit a statutory <u>Booker</u> error by sentencing Zarabia under a mandatory guidelines scheme. <u>United States v. Zarabia</u>, 149 Fed. Appx. 903, 905-06 (11th Cir. 2005). Because the government could not show that this error was harmless, this Court vacated Zarabia's sentence and remanded for resentencing. <u>Id.</u> at 906. In doing so, this Court rejected Zarabia's challenge to the application of the 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(vii), and stated that, "on remand, the district court is required to sentence Zarabia under an advisory Guidelines regime, and shall consider the Guidelines range of 77-96 months' imprisonment" and the other 18 U.S.C. § 3553(a) factors. <u>Id.</u> at 907.

## B. Resentencing Hearing

At the resentencing hearing, the district court again adopted the undisputed factual statements and guidelines calculations contained in the PSI and determined that Zarabia's total offense level was 21, his criminal history category was VI, and his advisory guidelines range was 77 to 96 months.

The district court then asked: "Do you wish to make a statement or present any information in mitigation of sentence?" In response, Zarabia's counsel moved for a downward departure based on over-representation of criminal history.

5

Specifically, counsel noted that (1) Zarabia only had 13 criminal history points and was "right on the cusp of the highest criminal history category," (2) three of those points were because Zarabia committed the instant illegal re-entry offense within two years following his release from custody,[2] and (3) although Zarabia had numerous convictions, most of them were "fairly minor" and he did not have any "three point offenses." Accordingly, Zarabia's counsel moved for a one-level downward departure to a criminal history category of V, with a corresponding guidelines range of 70 to 87 months.

After hearing from the probation officer and the government, the district court denied the motion, stating:

> Well, I've looked at the records and I see what it is that he had before. I think that now that the guidelines are, indeed, advisory and they are not mandatory, the Court in considering . . . the arguments that are made in front of me today, I don't think your request for over representation is well taken, it is denied and the Court is imposing a sentence of 77 months based upon the advisory of the guidelines and also based upon the requirements of [18 U.S.C. §3553(a)(1)-(7)]. I think the sentence is reasonable.

The district court then asked whether there was "[a]nything further that your client wants to say?" Zarabia then addressed the court, stating that he had been taking

---

[2]As noted earlier, only one criminal history point was attributed to Zarabia for committing the instant illegal re-entry offense within two years of his release from imprisonment. The two other criminal history points were attributed to him for committing the instant offense while on supervised release.

6

GED classes and English classes, and that he was on the waiting list for an auto mechanics class. The district court told Zarabia that the best way he can help his family is to improve himself and "get all of the training that you can get right now" so that he could earn a living once he is released from prison. The district court then asked whether there was "[a]nything else," and Zarabia's counsel responded, "No, Your Honor."

The district court sentenced Zarabia to 77 months' imprisonment and 3 years' supervised release, noting that "[a]fter considering the advisory sentencing guidelines and all of the factors identified in Title 18, United States Code, Section 3553(a), one through seven, the Court finds that the sentence imposed is sufficient but not greater than necessary to comply with the statutory purposes of sentencing."

The district court next asked whether counsel had any other objections to the sentence or the manner in which the Court pronounced sentence. At that point, Zarabia's counsel referred to "the three [criminal history] points that Mr. Zarabia received for coming back into the country within two years after his deportation," and noted an alleged inconsistency between (a) the PSI, which suggested that Zarabia's illegal re-entry offense began in 1999, and (b) the indictment, which charged Zarabia with being found in the United States in 2004. After the probation

7

officer and the government stated that the illegal re-entry offense actually started on July 10, 1999, (which was when Zarabia was arrested in Georgia), Zarabia's counsel stated that she had no argument in rebuttal and "would just like to preserve that objection." The district court stated, "Well, it's preserved and overruled." The district court again asked whether counsel had any other objections, and this time, no additional objections were raised. This second appeal followed.

## II. DISCUSSION

### A. Criminal History Calculation

On appeal, Zarabia argues that the district court erred by assessing one criminal history point, pursuant to U.S.S.G. § 4A1.1(e), for committing the instant illegal re-entry offense less than two years after he was released from imprisonment on March 16, 1998. Relying primarily on United States v. Scott, 447 F.3d 1365 (11th Cir. 2006), Zarabia argues that the instant illegal re-entry offense did not begin until he was discovered in jail by federal immigration officials in 2004. Without this additional criminal history point, Zarabia contends that he should have had a criminal history category of V and an advisory guidelines range of 70 to 87 months. We need not address this argument for several reasons.

First, this Court's decision in Zarabia's first appeal contained a limited

remand that directed the district court "to sentence Zarabia under an advisory Guidelines regime, and . . . consider the Guidelines range of 77-96 months' imprisonment" and the other 18 U.S.C. § 3553(a) factors. Zarabia, 149 Fed. Appx. at 907. Zarabia's sentence was vacated solely on the ground that the district court sentenced Zarabia under a mandatory, as opposed to an advisory, guidelines regime. See id. at 905-07. Thus, on remand, the district court was limited in what issues it could consider. See United States v. Davis, 329 F.3d 1250, 1252 (11th Cir. 2003) (noting that, when an appellate court issues a limited remand, "the trial court is restricted in the range of issues it may consider on remand"); see also United States v. Tamayo, 80 F.3d 1514, 1520 (11th Cir. 1996). Accordingly, Zarabia's objection to the additional one criminal history point under § 4A1.1(e) was outside the scope of this Court's limited remand, and the district court did not err by overruling the objection.

Second, even if we treat the decision in Zarabia's first appeal as a general remand, this particular challenge to Zarabia's criminal history calculation is foreclosed by the law-of-the-case doctrine. In his first appeal, Zarabia challenged his guideline calculation (such as the 16-level enhancement), but Zarabia did not challenge the district court's overall criminal history calculation or, more importantly, the one criminal history point attributed to him, pursuant to

9

§ 4A1.1(e), for committing the instant illegal re-entry offense less than two years after his release from imprisonment on his alien smuggling offense. See Zarabia, 149 Fed. Appx. at 907. Under the law-of-the-case doctrine, lower court rulings that have not been challenged on a first appeal will not be disturbed in a subsequent appeal. See, e.g., United States v. Escobar-Urrego, 110 F.3d 1556, 1560 (11th Cir. 1997); United States v. Fiallo-Jacome, 874 F.2d 1479, 1481-83 (11th Cir. 1989).

There are three exceptions to the law-of-the-case doctrine, and a court is not bound by a prior ruling if (1) new evidence is presented; (2) there is a change in the controlling law; or (3) the prior decision was clearly erroneous and will cause manifest injustice. Escobar-Urrego, 110 F.3d at 1561. None of the exceptions to the law-of-the-case doctrine apply in this case. First, Zarabia did not present any new evidence. Second, there has not been a change in the law. And third, the district court's decision to assess one criminal history point under § 4A1.1(e) was not clearly erroneous.

Under § 4A1.1(e), one or two additional criminal history points are added to a defendant's criminal history score "if the defendant committed the instant offense less than two years after release from imprisonment on a sentence" exceeding 60

days.[3]  U.S.S.G. § 4A1.1(e). According to the commentary to § 4A1.1(e), the additional criminal history points are added "if the defendant committed any part of the instant offense (i.e., any relevant conduct) less than two years following release from confinement . . . ."  U.S.S.G. § 4A1.1 cmt. n.5.  Thus, the question is whether Zarabia committed any part of his instant illegal re-entry offense within two years of his release from confinement.

Here, the district court's imposition of one additional criminal history point under § 4A1.1(e) was proper.  Zarabia was released from confinement on his alien smuggling offense, for which he was sentenced to 200 days' imprisonment, on March 16, 1998.  Zarabia's offense conduct for the instant offense, illegally re-entering the United States, began at least by July 10, 1999, the date that he was arrested in Georgia.  Thus, Zarabia committed part of his illegal re-entry offense, namely returning to the United States without permission, less than two years after his release from imprisonment.

Zarabia's cites Scott, but Scott addresses when an illegal re-entry offense is complete or ends, not when that offense begins.  Because Zarabia relies so heavily on Scott, we discuss Scott in detail and explain why, if anything, Scott shows that

---

[3]Here, Zarabia's criminal history score only was increased by one point under § 4A1.1(e) because Zarabia also received an additional two criminal history points under § 4A1.1(d) for committing the instant offense while on supervised release.  See U.S.S.G. § 4A1.1(e).

part of Zarabia's offense was committed within two years of his release from custody.

In Scott, the alien was deported from the United States in 1991; illegally re-entered the United States in 1994; and was convicted in a Florida state court for possession of cocaine in 1999, for which he received a probationary sentence. Scott, 447 F.3d at 1366. Thereafter, Scott violated the terms of his probation, and on August 25, 2004, was arrested in Florida. Id. On that same day, Scott was interviewed by an immigration official and provided details about his previous deportation and illegal re-entry, but he was not arrested on immigration violations at that time. Id. at 1366-67.

On September 15, 2004, Scott's probation was revoked and he was sentenced to 180 days' imprisonment. Id. at 1367. On January 5, 2005, while Scott still was serving this sentence, Scott again was interviewed by immigration officials, and his identity was confirmed. Id. Scott subsequently was arrested and charged with being "found in" the United States after having previously been deported, in violation of 8 U.S.C. § 1326. Id. at 1367-68. After Scott pled guilty to illegal re-entry, the federal sentencing court found that Scott had committed the charged illegal re-entry offense while serving a 180-day sentence for a probation violation and added one criminal history point to Scott's criminal history score,

12

pursuant to § 4A1.1(e).[4]  Id. at 1367.  On appeal, Scott argued that his illegal re-entry violation was completed when the federal immigration officials first located him on August 25, 2004, that he did not receive and start serving his 180-day sentence until September 15, 2004, and that, therefore, he had not committed his illegal re-entry offense while serving his 180-day sentence.  Id. at 1368.

Because of this sequence of events, the Scott Court had to determine "when Scott's crime of illegal reentry was completed – meaning when was he 'found in' the United States," in order to determine whether the district court properly calculated Scott's criminal history score.  Scott, 447 F.3d at 1368.  The issue in Scott required this Court to "focus[] squarely upon the meaning of the phrase 'found in'" in § 1326.  Id.  The Scott Court noted that we "had previously 'held that the crime of being "found in" the United States commences when the alien enters the United States and is not completed until the defendant's arrest.'"  Id. (quoting United States v. Coeur, 196 F.3d 1344, 1346 (11th Cir. 1999)).  In Scott, this Court agreed that "a violation of § 1326 is a continuing offense that can run over a long period of time, as the offense conduct begins when the alien illegally enters the United States and continues until the alien is actually 'found' by

_____

[4]Section 4A1.1(e) applies in two different situations: (1) if the defendant commits the instant offense less than two years after release from imprisonment on a sentence of at least 60 days, or (2) if the defendant commits the instant offense while in imprisonment or escape status on a sentence of at least 60 days.  See U.S.S.G. § 4A1.1(e).

13

immigration authorities." Id. at 1369; see also Coeur, 196 F.3d at 1346.

Ultimately, the Scott Court held that "an alien is constructively 'found in' the United States when the government either knows of or, with the exercise of diligence typical of law enforcement authorities, could have discovered the illegality of the defendant's presence." Scott, 447 F.3d at 1369 (quotation marks omitted). The Court then determined that Scott should have been considered "found in" the United States, for purposes of § 1326, on August 25, 2004, the date of his initial interview with immigration officials. Id. at 1370. The Scott Court concluded that on August 25, 2004, Scott's illegal re-entry offense was complete and he had not yet begun serving his 180-day sentence for the probation violation (as it was not imposed until September 15, 2004). Accordingly, this Court concluded that the district court improperly applied § 4A1.1(e) and vacated Scott's sentence. Id.

Here, there is no dispute that, under Scott, Zarabia's offense conduct was complete on April 14, 2004, the date that he was found in the United States by immigration officials. Rather, the issue in this case is when Zarabia's offense conduct began – on July 10, 1999, when he was arrested in Georgia, or on April 14, 2004, when he was found in the United States by immigration officials.

Based on Scott and Coeur, we conclude that Zarabia's violation of § 1326

14

began when he illegally re-entered the United States, and that this offense conduct necessarily occurred on or before July 10, 1999, the date that Zarabia undisputedly was arrested in Georgia. Therefore, part of Zarabia's offense conduct occurred within two years of his release from imprisonment on March 16, 1998. Accordingly, Zarabia has not shown that the district court erred in adding one criminal history point to his criminal history score, pursuant to § 4A1.1(e), for committing the instant illegal re-entry offense within two years of his release from imprisonment.

**B.      Allocution**

Zarabia argues that the district court erred by imposing sentence before allowing him the opportunity for allocution, as required by Fed. R. Crim. P. 32(i)(4)(A). Although Zarabia admittedly addressed the court at the resentencing hearing, Zarabia argues that this did not occur until after the district court already had imposed sentence.

Rule 32(i)(4)(A) provides that "[b]efore imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence . . . ." Fed. R. Crim. P. 32(i)(4)(A)(ii). However, "a district court's failure to permit a defendant to allocute at sentencing does not rise to the level of a constitutional error or a

15

fundamental procedural defect, such that the omission is 'inconsistent with the rudimentary demands of fair procedure.'" United States v. Quintana, 300 F.3d 1227, 1231 (11th Cir. 2002) (quoting Tamayo, 80 F.3d at 1521). Therefore, "[i]f the defendant does not object to the district court's failure to permit allocution at sentencing, we will remand only if the failure results in manifest injustice." Id. at 1231-32.[5]

At his resentencing, Zarabia did not object to the district court's failure to permit allocution, and thus, we will remand only for manifest injustice. "To demonstrate manifest injustice, a petitioner must demonstrate (1) that there was error; (2) that was plain; (3) that affected his substantial rights; and (4) that affected the fundamental fairness of the proceedings." Quintana, 300 F.3d at 1232.

Here, Zarabia points out that the district court noted it was "imposing a sentence of 77 months" after it denied Zarabia's motion for downward departure but before allowing Zarabia the opportunity to allocute. We also recognize the government's argument that the sentencing transcript read as a whole makes clear that the district court did not formally impose a sentence until after personally addressing Zarabia and allowing him an opportunity to speak on his own behalf.

---

[5]See also United States v. Jones, 899 F.2d 1097, 1103 (11th Cir. 1990) ("Where the district court has offered the opportunity to object and a party is silent . . . , objections to the sentence will be waived for purposes of appeal, and this court will not entertain an appeal based upon such objections unless refusal to do so would result in manifest injustice."), overruled on other grounds by United States v. Morrill, 984 F.2d 1136 (11th Cir. 1993).

16

We need not decide what came first because even if we assume arguendo that the district court imposed a sentence without first allowing Zarabia an opportunity to allocute, Zarabia has not demonstrated manifest injustice. Zarabia was sentenced to the lowest sentence under the advisory guidelines range, and he has failed to articulate, on appeal, anything that he could have said that would have resulted in the district court imposing a sentence below the advisory guidelines range. Indeed, the district court ultimately allowed Zarabia to allocute and then repeated the same sentence. Simply, Zarabia has not carried his burden to demonstrate manifest injustice.

## C.  Reasonableness of Sentence

Zarabia argues that the district court imposed sentence without any discussion of the 18 U.S.C. § 3553(a) factors, and therefore, that the district court applied the guidelines "in a de facto mandatory or presumptively reasonable manner" in violation of his Fifth and Sixth Amendment rights. Zarabia also argues that his sentence is unreasonable. Specifically, Zarabia contends that (1) his advisory guidelines range was heavily influenced by his criminal history, which he contends "is different than a typical category VI offender"; (2) the application of the guidelines "led to an unreasonable and unjust result" by enhancing his sentence 16 levels based on a prior conviction for which he received only a 6 1/2-month jail

17

sentence; and (3) his sentence resulted in an unwarranted sentencing disparity compared with similarly-situated defendants in jurisdictions with an early disposition, or "fast-track," program.

After Booker, a district court, in determining a reasonable sentence, must correctly calculate the sentencing range under the guidelines and then consider the factors set forth in 18 U.S.C. § 3553(a). See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).[6] "[N]othing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). Instead, indications in the record that the district court considered facts and circumstances falling within § 3553(a)'s factors will suffice. Id. at 1329-30; Talley, 431 F.3d at 786.

We review a defendant's ultimate sentence for reasonableness in light of the § 3553(a) factors. See United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir.

---

[6]"The factors in § 3553(a) include:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.
Talley, 431 F.3d at 786 (citing 18 U.S.C. § 3553(a)).

18

2005). This "[r]eview for reasonableness is deferential. . . . and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." Talley, 431 F.3d at 788. "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." Id.

After review, we cannot say that Zarabia's 77-month sentence is unreasonable. First, the district court correctly calculated the advisory guidelines range and indicated that it had considered the § 3553(a) factors. Although the district court did not discuss each of the § 3553(a) factors, it was not required to do so. See Scott, 426 F.3d at 1329. Moreover, the record indicates that the district court considered several of the § 3553(a) factors, including (1) the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), when it denied Zarabia's motion for downward departure based on an over-representation of criminal history; (2) the need to provide the defendant with needed educational or vocational training, § 3553(a)(2)(D), when it advised Zarabia to improve himself and "get all of the training that you can get right now"; and (3) the advisory guidelines term of imprisonment, § 3553(a)(4). Accordingly, we reject Zarabia's claim that the district court treated the guidelines in a de facto mandatory manner.

19

Second, the district court imposed a sentence within the advisory guidelines range, and "we ordinarily will expect that choice to be a reasonable one." Talley, 431 F.3d at 788.

Finally, Zarabia has not met his burden of showing that his sentence is unreasonable. None of the factors he cites demonstrate that his 77-month sentence is unreasonable. First, as discussed above, the district court correctly calculated Zarabia's criminal history category. Second, the 16-level enhancement was proper under the guidelines and was affirmed by this Court in Zarabia's first appeal, and therefore, did not lead to an unreasonable or an unjust sentence. Third, Zarabia's argument that the lack of a "fast-track" program in the Middle District of Florida creates an unwarranted sentencing disparity already has been rejected by this Court. See United States v. Castro, 455 F.3d 1249, 1252-53 (11th Cir. 2006) (concluding that § 3553(a)(6) does not require the district court to depart based on the availability of a "fast-track" departure in some districts and affirming sentence as reasonable). Accordingly, we cannot say that the district court's sentence is unreasonable.

### III. CONCLUSION

Based on the foregoing reasons, we affirm Zarabia's 77-month sentence.

**AFFIRMED.**

20