United States Court of Appeals,

Eleventh Circuit.

No. 95-5063.

UNITED STATES of America, Plaintiff-Appellee,

v.

Alvaro ESCOBAR-URREGO, Defendant-Appellant.

May 1, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 92-300-CR-UUB), Ursula Ungaro-Benages, Judge.

Before HATCHETT, Chief Judge, COX, Circuit Judge, and MESKILL[*], Senior Circuit Judge.

MESKILL, Senior Circuit Judge:

Alvaro Escobar-Urrego pleaded guilty to importing liquified cocaine into this country. At his sentencing, the United States District Court for the Southern District of Florida, Ungaro-Benages, *J.,* decided that Escobar-Urrego had imported 2,036 grams of usable cocaine and sentenced Escobar-Urrego accordingly. *See United States v. Rolande-Gabriel,* 938 F.2d 1231 (11th Cir.1991) (sentences for drug offenders to be based on "usable" quantity of drugs possessed by defendant). After Escobar-Urrego was sentenced, the United States Sentencing Guidelines (Guidelines) were amended retroactively to state that a drug offender's sentence should be based on only the quantity of drugs possessed by the defendant that could be "used." Guidelines App. C, Amendment 484 (amending Guidelines § 2D1.1, Application Note 1). Escobar-Urrego then moved to have his sentence recalculated based on the amendment, and the

[*]Honorable Thomas J. Meskill, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

district court denied Escobar-Urrego's motion.

We conclude that the question of how much usable cocaine Escobar-Urrego imported has already been decided, and that Escobar-Urrego is therefore barred by the law-of-the-case doctrine from relitigating the issue. Accordingly, we affirm the decision of the district court.

BACKGROUND

I. *Sentencing*

In May 1992, Alvaro Escobar-Urrego arrived at the Miami International Airport from Columbia and presented his luggage to United States Customs Agents. The Customs Agents performed a field test on a liquid contained in two bottles Escobar-Urrego was carrying, and the liquid tested positive for cocaine.

Escobar-Urrego was arrested and indicted for importing cocaine into the United States in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 18 U.S.C. § 2 (Count I), and for possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II). The government eventually entered into a plea agreement with Escobar-Urrego, and pursuant to that agreement, Escobar-Urrego pleaded guilty to Count I and the government dropped Count II.

To sentence Escobar-Urrego, the district court had to determine how much cocaine Escobar-Urrego imported, and at the time, the issue was controlled by *United States v. Rolande-Gabriel,* 938 F.2d 1231 (11th Cir.1991). In that case, Mary Rolande-Gabriel pleaded guilty to importing a liquid which contained cocaine. *Id.* at 1233. A laboratory test determined that the total weight of the

liquid was 241.6 grams. *Id.* at 1232. However, before the cocaine could be used as intended, the cocaine had to be separated from the liquid, and once that was done, the liquid contained only 72.2 grams of usable cocaine. *Id.* at 1233, 1235. The district court based Rolande-Gabriel's sentence on 241.6 grams of cocaine. *Id.* at 1233.

On appeal, this Court stated:

Rolande-Gabriel's sentence was based on a weight of 241.6 grams, despite the fact that only 72 grams of the mixture were usable; however, a defendant possessing a usable mixture of cocaine ... weighing 75 grams would receive a significantly smaller sentence than Rolande-Gabriel. This is manifestly unjust and defeats the Sentencing Guidelines' stated policy of sentencing uniformity and proportionality.

*Id.* at 1237. Accordingly, this Court held that a defendant's sentence should be based on only the "usable" quantity of drugs that the defendant possessed. *Id.* Here, because Escobar-Urrego imported a mixture that contained both usable cocaine and an unusable liquid substance, *Rolande-Gabriel* mandated that Escobar-Urrego's sentence be based on only the usable cocaine that Escobar-Urrego imported.

The Drug Enforcement Agency (DEA) measured the liquid Escobar-Urrego imported and determined that its total weight was 4,173 grams. The DEA also weighed the liquid and noted its purity, and determined that the total quantity of cocaine Escobar-Urrego imported, minus the unusable liquid, was 2,036 grams. At Escobar-Urrego's sentencing, his defense attorney stated that he had consulted with an independent chemist about the DEA's test, and that the independent chemist concluded that the DEA's test was accurate. However, Escobar-Urrego maintained that he imported only

258 grams of cocaine.[1]  In an effort to determine how much cocaine

Escobar-Urrego actually imported, the district court engaged in the

following exchange:

>   The Court:  When the DEA lab weighed the cocaine did they
>       distill the cocaine from the liquid or did they just
>       weigh the liquid?
>
>   Defense Counsel:  They weighed the liquid and noted its
>       purity.
>
>   The Court:  Right....
>
>       ....
>
>   The Court:  Isn't there a particular discussion [in the
>       Guidelines] of how the drugs are supposed to be weighed
>       in [this case]?
>
>   Defense Counsel:  Judge, the case [apparently referring to
>       *Rolande-Gabriel* ] that Mr. Escobar-Urrego brought with
>       him ... talks about cases such as this where the
>       narcotics are not consumable in their present state, and
>       *that case suggests that you take away those portions that
>       are not usable and use only the actual drug.  And that's
>       essentially what happened in this case.*
>
>   The Court:  Well, I appreciate that you and the government
>       don't have a dispute about this....
>
>   Defense Counsel:  The reason I don't have a dispute ... is
>       because I conferred with ... an independent chemist ...
>       and he told me that that was an accurate report, an
>       accurate reading for purposes of total offense conduct
>       for the guidelines.

(emphasis added).

The district court stated on the record that it was "satisfied

that the amount of drugs determined by the DEA chemist [2,036

grams] is the correct amount of drugs."  The district court never

specifically found that Escobar-Urrego had imported 2,036 grams of

---

[1]How Escobar-Urrego arrived at the figure of 258 grams is
unclear.  The government contends that the figure was provided by
"jailhouse chemists" while Escobar-Urrego claimed at his
sentencing that his family in Columbia provided the figure.

*usable* cocaine. However, the district court understood that Escobar-Urrego's sentence was to be based on only the usable cocaine that Escobar-Urrego imported, and therefore, when the district court concluded that 2,036 grams was "the correct amount of drugs," it is clear that the district court did in fact decide that Escobar-Urrego imported 2,036 grams of *usable* cocaine.

Having decided that Escobar-Urrego imported 2,036 grams of usable cocaine, the district court concluded that Escobar-Urrego's base offense level was twenty-eight. *See* Guidelines § 2D1.1(c)(6)[2] & Note to Drug Quantity Table (A). The court decided that no adjustments to the base level were warranted, and that Escobar-Urrego had no criminal history points, *see* Guidelines § 4A1.1-.3. Therefore, the court concluded that the proper sentencing range was 78-97 months, *see* Guidelines § 5A, Zone D, and sentenced Escobar-Urrego to 78 months imprisonment to be followed by four years of supervised release.

Escobar-Urrego appealed his sentence, and although he raised several issues, he did not challenge the district court's conclusion that he imported 2,036 grams of usable cocaine. This Court affirmed the district court. *See United States v. Escobar-Urrego,* 28 F.3d 116 (11th Cir.1994) (table of decisions).

II. *The Amendment to the Guidelines and the Second Proceeding*

On November 1, 1993, about seven months after Escobar-Urrego was sentenced, Amendment 484 was added to the Guidelines. The

---

[2]When Escobar-Urrego was sentenced, Guidelines § 2D1.1(c)(8) determined his base offense level. In 1994, the Guidelines were amended, and although Guidelines § 2D1.1(c)(8) remained unchanged, it was renumbered Guidelines § 2D1.1(c)(6). For convenience, the Court is using the current numbering.

amendment states in pertinent part:

> Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be *used*.... If such material cannot readily be separated from the mixture or substance ... the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.

Guidelines App. C, Amendment 484 (emphasis added) (amending Guidelines § 2D1.1, Application Note 1). The amendment was made retroactive, *see* Guidelines § 1B1.10(a) & (c), and therefore applies to Escobar-Urrego's sentence.

Escobar-Urrego then made a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2), which allows an imprisoned defendant to move for a reduced sentence if the Guidelines are changed. Escobar-Urrego argued that under the amendment to the Guidelines, his sentence should be recalculated and based on only the amount of cocaine that he imported that could be "used." The government moved to deny Escobar-Urrego's motion, arguing that the same issue was raised at Escobar-Urrego's sentencing and decided against him.

United States Magistrate Judge Stephen T. Brown, to whom the case had been referred, recommended that Escobar-Urrego's motion be denied. After Escobar-Urrego objected, the district court adopted the magistrate judge's recommendation. Escobar-Urrego then filed this appeal.

### DISCUSSION

On appeal, Escobar-Urrego argues that under Amendment 484, his sentence should be based on only the usable quantity of cocaine that he imported. Escobar-Urrego argues that, as a factual matter, the sentence imposed on him was not based on the usable amount of

cocaine that he imported.  Rather, while Escobar-Urrego seemingly concedes that weighing the liquid and noting its purity will show the total amount of cocaine in the liquid, Escobar-Urrego contends that this method will not show how much cocaine could be extracted from the liquid and actually rendered usable.  Because the amendment requires that a defendant's sentence be based on only the usable quantity of drugs that a defendant imported, Escobar-Urrego argues that the cocaine should be retested and that his sentence should be modified accordingly.

In response, the government argues that the same issue was raised at Escobar-Urrego's sentencing and decided against him.  The government points out that at Escobar-Urrego's sentencing, pursuant to *Rolande-Gabriel,* the district court concluded that Escobar-Urrego imported 2,036 grams of usable cocaine.  The government contends that because the district court has already decided that Escobar-Urrego imported 2,036 grams of usable cocaine, there is no need to revisit that decision.  We agree.

I. *The Law of the Case*

While the government never specifically identifies its legal theory, it is clear that the government is relying on the law-of-the-case doctrine.  Under the law-of-the-case doctrine, an issue decided at one stage of a case is binding at later stages of the same case.  *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815-16, 108 S.Ct. 2166, 2177-78, 100 L.Ed.2d 811 (1988). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit."  18 Charles Alan Wright, Arthur R.

Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478, at 788 (1981).[3]

While the law-of-the-case doctrine has several arms, *see* 18 Wright *et al., supra,* § 4478, the only one relevant here deals with lower court rulings that have not been challenged on a first appeal.  As one court explained:

> Under the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.

*Williamsburg Wax Museum v. Historic Figures,* 810 F.2d 243, 250 (D.C.Cir.1987);  *see also United States v. Fiallo-Jacome,* 874 F.2d 1479, 1481-83 (11th Cir.1989) (criminal defendant failed to raise an issue on the defendant's first appeal, and when defendant tried to raise the issue in a subsequent appeal, the court refused to consider the issue, stating that the defendant would not be given "two bites at the appellate apple") (quotation omitted); *Silverberg v. Paine, Webber, Jackson & Curtis,* 724 F.2d 1456, 1457 (11th Cir.1983);  *Fogel v. Chestnutt,* 668 F.2d 100, 109 (2d Cir.1981) ("It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who has argued and lost.");  18 Wright *et al., supra,* § 4478 at 801 ("If the matter is omitted from one appeal, ... it may be held foreclosed on a later appeal to the same court as a matter of law of the case.").

---

[3]Because Escobar-Urrego has moved to modify a judgment, *see* 18 U.S.C. § 3582(c)(2), the doctrines of res judicata and collateral estoppel do not apply.  *Arizona v. California,* 460 U.S. 605, 619, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983).

Here, the issue that Escobar-Urrego has raised has already been decided.  At Escobar-Urrego's sentencing, the district court concluded pursuant to *Rolande-Gabriel,* 938 F.2d at 1237, that Escobar-Urrego imported 2,036 grams of "usable" cocaine.  Escobar-Urrego now seeks to receive the benefit of Amendment 484, which requires that his sentence be based on the quantity of cocaine that "can be used."  *See* Guidelines App. C, Amendment 484 (amending Guidelines § 2D1.1, Application Note 1).  *Rolande-Gabriel* 's "usable" standard and Amendment 484's "can be used" standard are plainly identical.

Because Escobar-Urrego had the opportunity to appeal the district court's decision that he imported 2,036 grams of usable cocaine but did not, that decision is the law of the case, and subject to the discussion below, precludes Escobar-Urrego from relitigating the question of how much usable cocaine he imported.

II. *Exceptions to the Law-of-the-Case Doctrine*

In an oft-quoted passage, the Fifth Circuit stated:

> While the "law of the case" doctrine is not an inexorable command, a decision of a legal issue or issues ... establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.

*White v. Murtha,* 377 F.2d 428, 431-32 (5th Cir.1967) (footnotes omitted);[4]  *Litman v. Massachusetts Mutual Life Ins. Co.,* 825 F.2d

---

[4]This Court has decided to be bound by decisions of the Fifth Circuit Court of Appeals made on or before September 30, 1981, the day before the Fifth Circuit was split into the Fifth and Eleventh Circuits. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206, 1209 (11th Cir.1981) (in banc).

1506, 1510 (11th Cir.1987) (same).

Here, no new evidence has been called to this Court's attention, and so the first *White* exception to the law-of-the-case doctrine does not apply.

Further, there has been no change in the law. The law—that a defendant's sentence should be based on only the amount of usable drugs possessed by the defendant—has remained the same, only the source of the law has changed. *See Rolande-Gabriel,* 938 F.2d at 1237; Guidelines App. C, Amendment 484 (amending Guidelines § 2D1.1, Application Note 1). Therefore, this exception does not apply.

Finally, the district court's decision was not a clear error. As discussed above, Escobar-Urrego seemingly concedes that weighing the liquid and noting its purity will show how much total cocaine was in the liquid. Escobar-Urrego contends, however, that weighing the cocaine and noting its purity will not show how much cocaine could be extracted from the liquid and actually rendered usable. Everyone at Escobar-Urrego's sentencing understood that Escobar-Urrego's sentence was to be based on only the amount of usable cocaine that Escobar-Urrego imported. After that point was established, Escobar-Urrego's counsel informed the district court that an independent chemist had concluded that 2,036 grams was accurate for sentencing purposes. While Escobar-Urrego's chemist may have been wrong, it is not clear to us that he was wrong, and it was not a clear error for the district court to rely on Escobar-Urrego's own chemist.

Accordingly, none of the exceptions to the law-of-the-case

doctrine are applicable here, and Escobar-Urrego is precluded from relitigating the question of how much usable cocaine he imported.[5]

CONCLUSION

We conclude that Escobar-Urrego is barred by the law-of-the-case doctrine from relitigating the question of how much usable cocaine he imported. Accordingly, the district court's order denying Escobar-Urrego's motion is AFFIRMED.

---

[5]We note that litigants who have never raised an issue have been held to have waived the issue for subsequent stages of the same litigation. *See United States v. Fiallo-Jacome,* 874 F.2d 1479, 1481-83 (11th Cir.1989) (issue was never raised in the district court or on defendant's first appeal even though defendant may have known of the issue during his trial, and this Court held that the issue was waived for defendant's second appeal). Because the question of how much usable cocaine Escobar-Urrego imported was raised at Escobar-Urrego's sentencing, we need not decide how this case would be resolved if the issue had never been raised.