[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 9, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-10873
Non-Argument Calendar

_____

D. C. Docket No. 05-20144-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISABEL GUERRA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 9, 2009)**

Before ANDERSON, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Isabel Guerra appeals her convictions and 70-month total sentence for one count of conspiring to defraud the United States by committing health care fraud, in violation of 18 U.S.C. § 1347, and paying kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A); several counts of committing health care fraud, in violation of § 1347; one count of conspiring to launder money, in violation of 18 U.S.C. § 1956(h); and several counts of laundering money, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Specifically, Guerra was found guilty of promising in Medicare provider applications not to pay kickbacks to promote her businesses, and then nonetheless paying kickbacks to patients, patient recruiters, and doctors for submitting their Medicare claims through her businesses. Guerra challenges (1) the sufficiency of the evidence supporting her health-care-fraud convictions; (2) the order of forfeiture entered against her; (3) the district court's calculation of her base offense level; and (4) the district court's application of a leadership-role enhancement. For the reasons set forth below, we affirm.

## I. Background and Facts

This is Guerra's second appeal to this Court. In United States v. Medina, 485 F.3d 1291, 1298-99 (11th Cir. 2007), we rejected Guerra's argument that she was not guilty of health care fraud because the claims submitted to Medicare were legitimate. We reasoned that, while the government had presented no evidence

that any of the claims were medically unnecessary or that any of the prescriptions and products were not delivered to the patients in question, Guerra's promise not to pay kickbacks rendered those claims that post-dated the Medicare provider applications fraudulent. Id. However, we vacated the convictions that rested on claims that pre-dated the applications. Id. Also, we accepted Guerra's argument that the district court had erred in holding her accountable for the full $7,000,000 in claims submitted to Medicare, such that her 99-month total sentence was erroneous. Id. at 1296, 1304. We reasoned that the district court had failed to adequately explain why it used the total amount of claims submitted to Medicare as the loss amount and noted that, because the evidence did not show that the claims were illegitimate, it appeared that Medicare had not suffered any actual or intended loss. Id. We therefore vacated her sentences and remanded for findings of fact and re-sentencing. Id.

At re-sentencing, the district court indicated that it interpreted Medina to mean that "there is no [health-care-fraud related] loss in the absence of . . . illegitimate prescriptions" and that, specifically as to the instant case, "[t]here was no evidence that any of the prescriptions per se were not medically necessary." The government asserted that, because the district court would not use the amount associated with the claims Medicare paid, the amount that Guerra had laundered, or

3

$698,551, now controlled.  The district court agreed.  Also, Guerra objected to the probation officer's application of a four-level leadership-role enhancement, specifically arguing that the conspiracy no longer involved five or more participants since this Court vacated certain of her codefendants' convictions in Medina.  The district court overruled this objection, reasoning that the evidence demonstrated that Guerra left her original position as a patient recruiter to begin her own business and ran this business from "the top of the pyramid," including putting together a "team of codefendants" to help run the "extensive operation" and making all of the important decisions with regard to the operation.

Using the aforementioned amount of $698,551, the district court set Guerra's base offense level at 20, or 6 plus 14 additional levels representing that amount, pursuant to U.S.S.G.  §§ 2S1.1(a)(1) and 2B1.1(a)(2) and (b)(1)(H).  The district applied a two-level enhancement, pursuant to U.S.S.G. § 2S1.1(b)(2)(B), because Guerra was convicted under § 1956; and a four-level enhancement, pursuant to U.S.S.G. § 3B1.1(a).  The district court determined that with a total offense level of 26 and criminal history category of I, Guerra's guideline imprisonment range was 63 to 78 months' imprisonment.  The district court indicated that, even were the guideline imprisonment range lower than what it calculated, it nevertheless would sentence Guerra within that guideline

4

imprisonment range, because it believed such a sentence was appropriate under the 18 U.S.C. § 3553(a) factors. Specifically, the district court explained that Guerra had perpetrated "[o]ne of the most extensive frauds that [it had] dealt with" and that this fraud involved "a large number of medical beneficiaries" and a "large amount of money." The district court also stated that Guerra had "[taken] advantage of not only the Medicare system, but[,] in [its] view[,] the beneficiaries, and used those people;" had acted with the sole aim of profiting illegally, rather than helping those in need of medical care; and had "show[n] a complete disregard for the rules of [M]edicare, which is set up to help people that need help and not to line her own pockets and her family's pockets." The district court likewise stated that it believed the only way to send "a very bad signal" for deterrence purposes was imposing a substantial sentence because, otherwise, "[s]omeone may see a large amount of money and determine that getting a light sentence may be worth it." Accordingly, the district court sentenced Guerra to a total of 70 months' imprisonment.

Regarding forfeiture, the government noted that the district court previously ordered forfeiture of $9,405,114.90 and stated that the district court should re-issue this order. The district court stated that it believed the amount should be decreased because this Court had vacated certain of the convictions on which the forfeiture

5

order was based. The government asserted that the amount associated with those claims on which Guerra's affirmed health-care-fraud convictions rested, or $7,641,968.98, now controlled. Guerra responded that she "[had] no way to prove or disprove that proffer." The district court agreed with the government and ordered forfeiture of $7,641,968.98.

## II. Law and Analysis

## A. Convictions & Forfeiture Order

Pursuant to the law-of-the-case doctrine, an issue decided at one stage of a case is binding at later stages of the same case. United States v. Escobar-Urrego, 110 F.3d 1556, 1560 (11th Cir. 1997). Likewise, a "legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." Id. The purpose of this doctrine is "to maintain consistency and avoid reconsideration of matters once decided." Id. Moreover, under the mandate rule, which is simply an application of the law-of-the-case doctrine, a district court acting under an appellate court's mandate "cannot vary [the mandate], or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle

with it, further than to settle so much as has been remanded." United States v. Amedeo, 487 F.3d 823, 830 (11th Cir. 2007). The law-of-the-case doctrine applies in all instances, save those in which (1) the evidence on a subsequent trial was substantially different, (2) controlling authority has since made a contrary decision of the law applicable to such issues, or (3) the decision was clearly erroneous and would work a manifest injustice. Escobar-Urrego, 110 F.3d at 1561.

Here, Guerra is barred from re-litigating the question of whether she committed health care fraud. See Escobar-Urrego, 110 F.3d at 1560. In Medina, we affirmed certain of her health-care-fraud convictions, holding that her promise not to pay kickbacks and subsequent payment of kickbacks rendered the claims she submitted to Medicare fraudulent. See Medina, 485 F.3d at 1298-1304. We remanded the case to the district court for the sole purpose of re-sentencing and, more specifically, making sufficient findings of fact on the amount of loss for which Guerra was responsible. Id. at 1304-05. Therefore, our decision that Guerra indeed committed health care fraud is binding absent appeal to the Supreme Court. See Escobar-Urrego, 110 F.3d at 1560. Also, the district court was precluded from addressing matters outside the question of re-sentencing. See Amedeo, 487 F.3d at 830. Guerra has not argued, and the record otherwise does not demonstrate, that any of the exceptions to the law-of-the-case doctrine bar this conclusion. See

7

Escobar-Urrego, 110 F.3d at 1561.

Guerra also is barred from challenging the forfeiture order. See id. Because she failed to pursue the issue of forfeiture on first appeal to this Court, she has waived the right to challenge the order now. See id. Although the district court altered the order at re-sentencing, the new order of forfeiture is less than that previously issued, such that it does not appear that Guerra first declined to pursue the matter on appeal because she was satisfied with the amount ordered and now wishes to pursue the matter because she is unsatisfied. Guerra has not argued, and the record otherwise does not demonstrate, that any of the exceptions to the law-of-the-case doctrine bar this conclusion. See Escobar-Urrego, 110 F.3d at 1561. Accordingly, we affirm as to these issues.

## B. Base Offense Level

As an initial matter, it appears the district court incorrectly calculated Guerra's base offense level. A defendant convicted of a money-laundering offense is sentenced pursuant to § 2S1.1. Under this Guideline, a defendant who did not commit the underlying offense from which the laundered money derived, or for whom the base offense level of the underlying offense cannot be determined, is given a base offense level of eight plus the number of offense levels in the § 2B1.1 loss table that correspond to the value of the laundered funds. U.S.S.G.

§ 2S1.1(a)(2).  On the other hand, a defendant who committed the underlying

offense, as Guerra did here, is given the base offense level for that underlying

offense.  U.S.S.G. § 2S1.1(a)(1).  The underlying offense applicable here, health

care fraud, is sentenced pursuant to § 2B1.1.  Under this Guideline, the defendant

is given a base offense level of six plus the number of offense levels in the § 2B1.1

table that correspond to the amount of loss for which the defendant is responsible.

U.S.S.G. § 2B1.1(a)(2), (b)(1).

Pursuant to § 2B1.1, Guerra's base offense level was six.  See U.S.S.G.

§ 2B1.1(a)(2).  While the district court added 14 levels based on its finding that

$698,551 was the amount of money laundered, Guerra actually did not merit any

additional levels from the § 2B1.1 loss table because she was not responsible for

any loss to Medicare.  See Medina, 485 F.3d at 1304-05; U.S.S.G. § 2B1.1(b)(1).

The commentary to this Guidelines includes no provision equating "loss" with the

value of the laundered funds.  See generally U.S.S.G. § 2B1.1, comment.

Therefore, with the additional enhancements, Guerra's total offense level was 12.

See U.S.S.G. §§ 2B1.1(a)(2); 2S1.1(b)(2)(B); 3B1.1(a).  With this total offense

level and a criminal history category of I, Guerra's guideline imprisonment range

was 10 to 16 months.[1]  This error, however, appears to have been harmless, as

[1] We note that, had Guerra not committed health care fraud, her guideline imprisonment range actually would have been much higher.  In that scenario, § 2S1.1(a)(2) would be the

9

discussed below.

In <u>United States v. Keene</u>, 470 F.3d 1347, 1349 (11th Cir. 2006), we held that a Guidelines calculation error is harmless, and thus does not require remand, when (1) the record includes evidence that the district court would have reached the same result even if it had decided the Guidelines issue the other way, and (2) the sentence imposed would be reasonable even if the Guidelines issue had been decided the other way.  In that case, the defendant appealed his convictions and 120-month sentences for bank robbery, specifically challenging the application of a two-level threat-of-death enhancement under U.S.S.G. § 2B3.1(b)(2)(F).  <u>Id.</u> at 1348.  We noted that, without the enhancement, the defendant's guideline imprisonment range was 84 to 105 months, while, with the enhancement, it was 100 to 125 months.  <u>Id.</u> at 1350.  We held, though, that we need not decide the Guidelines issue because any error was harmless.  <u>Id.</u> We reasoned that the district court had stated that, even were its Guidelines calculations incorrect, its consideration of the § 3553(a) factors compelled the sentence imposed.  <u>Id.</u> at

applicable Guideline.  Pursuant to § 2S1.1(a)(2), Guerras's base offense level would be 8 plus 14, representing the $698,551 that she laundered.  <u>See also</u> U.S.S.G. § 2B1.1(b)(1)(H). Therefore, with the additional enhancements applied, Guerra's total offense level would be 28. <u>See</u> U.S.S.G. §§ 2B1.1(b)(1)(h); 2S1.1(b)(2)(B); 3B1.1(a).  With this total offense level and a criminal history category of I, Guerra's guideline imprisonment range would be 78 to 97 months. Thus, it appears that a defendant who does not commit the underlying crime can be subject to a far harsher sentence than a defendant who does. We find it unnecessary to address this seeming inconsistency here, however.

1349. We also reasoned that the 120-month sentence would be reasonable were it a variance from the lower guideline imprisonment, given the defendant's criminal history, leadership role, and recruitment of other participants. Id. at 1350. We concluded that "it would make no sense to set aside this reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." Id.

In reviewing a sentence for reasonableness, we consider whether the statutory factors in § 3553(a) support the sentence in question. Gall v. United States, 552 U.S. __, 128 S.Ct. 586, 598-99, 169 L.Ed.2d 445 (2007). Pursuant to § 3553(a), the sentencing court shall impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing listed in § 3553(a)(2), namely reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, deterring criminal conduct, protecting the public from future criminal conduct by the defendant, and providing the defendant with needed educational or vocational training or medical care. See 18 U.S.C. § 3553(a)(2). The statute also instructs the sentencing court to consider certain factors, including the nature and circumstances of the offense and the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1).

Here, the district court's error in calculating the guideline imprisonment range as 63 to 78 months did not affect the outcome of the case. See Keene, 470 F.3d at 1349. The district court stated that, even were the guideline imprisonment range lower than what it calculated, it nevertheless would sentence Guerra within that guideline imprisonment range, because it believed such a sentence was appropriate under the § 3553(a) factors. See id. Also, assuming that the district court had calculated the correct 10-to-16-month guideline imprisonment range, Guerra's 70-month sentence would not fail reasonableness review. See id. The district court explicitly stated at sentencing that it had considered the § 3553(a) factors. The district court then discussed at length the seriousness of Guerra's offense, Guerra's characteristics, and the need to impose a substantial sentence to deter future crimes of this nature. See 18 U.S.C. § 3553(a)(1), (2). All of which is amply supported in the record. Given these factors, the upward variance imposed from the correct guideline imprisonment range, though large, was not unreasonable. See 188 U.S.C. § 3553(a)(1), (2). Accordingly, because the district court's error was harmless , we affirm as to this issue.

## C. Leadership-Role Enhancement

We review a district court's application of a leadership-role enhancement for clear error. United States v. Rendon, 354 F.3d 1320, 1331 (11th Cir. 2003).

12

Pursuant to § 3B1.1(a), a district court can increase a defendant's base offense level by four "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Pursuant to the commentary to § 3B1.1(a), the factors the district court should consider in determining whether a defendant held a leadership role in a conspiracy include "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n. 4). Also, pursuant to the commentary, there can be more than one leader or organizer in a conspiracy. Id.

Here, the district court did not clearly err in applying a four-level enhancement, pursuant to § 3B1.1(a). See Rendon, 354 F.3d at 1331. First, it is of no import that we vacated the convictions of certain of Guerra's co-conspirators, as the record demonstrates that the conspiracy was "otherwise extensive" since it involved submitting millions of dollars in claims to Medicare and required the aid of many beneficiaries. See U.S.S.G. § 3B1.1(a). Also, the record demonstrates that Guerra was the person who founded and owned 50% interests in the

13

businesses in question, such that she had a higher claim in the profits derived from the conspiracy than her co-conspirators. <u>See</u> U.S.S.G. § 3B1.1, comment. (n. 4). Accordingly, we affirm at to this issue. <u>See</u> <u>Rendon</u>, 354 F.3d at 1331.

**AFFIRMED.**