[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11190
Non-Argument Calendar
_____

D.C. Docket No. 6:95-cr-00238-ACC-DAB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

W. JAMES PICKETT, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 29, 2013)

Before CARNES, HULL, and JORDAN, Circuit Judges.

PER CURIAM:

W. James Pickett, III, proceeding pro se, appeals the district court's denial of his motion to enjoin the government from offsetting his Social Security benefits to collect his restitution judgment using the Treasury Offset Program, 31 U.S.C. § 3716. He contends that the underlying restitution judgment is illegal and void and that even if it is valid, it is now unenforceable. This appeal is the latest of many attempts by Pickett to challenge the restitution judgment against him—all of which have been unsuccessful.

## I.

In 1996 Pickett was convicted of 34 counts of Medicare, Medicaid, and mail fraud, in violation of 18 U.S.C. §§ 287 and 1341 and 42 U.S.C. § 1320(a)-7b(a)(1). He was sentenced to 33 months imprisonment and 36 months supervised release. The court also ordered him to pay $169,949 in restitution to the Florida Agency for Health Care Administration, $44,482.76 to the Department of Health and Human Services, and $42.90 to Humana, for a total restitution amount of $214,474.66. The part of the judgment addressing supervised release stated, "If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of the supervised release." Pickett appealed his conviction and sentence, and we affirmed. United States v. Pickett, 152 F.3d 933 (11th Cir. 1998).

2

In 1999 Pickett filed a 28 U.S.C. § 2255 motion in which he asserted several challenges to the restitution judgment. The district court denied that motion, concluding that Pickett's challenges to the restitution judgment were procedurally barred because he either failed to raise them on direct appeal or this Court had already rejected them. Both the district court and this Court denied Pickett a certificate of appealability.

Pickett was released from prison in August 1999 and began serving his supervised release. In August 2000 he received a discharge in bankruptcy under 11 U.S.C. § 727. In 2001 the United States Probation Office filed a petition for revocation of Pickett's supervised release because he had failed to obtain employment and pay his restitution judgment, which were conditions of his release. The district court revoked Pickett's supervised release and imposed six months imprisonment, concluding that Pickett's employment appeared to be a sham and that he had made "no effort to make any restitution" despite the ability to pay legal counsel in civil matters, maintain his monthly expenses, and pay college tuition. On appeal, we affirmed.

In September 2002 Picket paid $30 toward his restitution debt. In November 2002 he filed a motion for declaratory judgment, contending that his restitution judgment was void. The district court denied that motion.

In 2004 he filed a second motion under 28 U.S.C. § 2255, again challenging his restitution judgment. The district court dismissed that motion without prejudice to allow Pickett to seek permission from this Court to file a second § 2255 motion, which he did not do.

In 2007 the United States Department of Justice sent Pickett a notice of intent to offset his Social Security benefits through the Treasury Offset Program (TOP) in order to satisfy the $44,452.72 in restitution owed to the Department of Health and Human Services. The notice advised Pickett that he had 60 days to either pay the debt in full, enter a repayment agreement, or present evidence that all or part of the debt was satisfied. Pickett responded to the notice, denying that he owed any money to the United States. In February 2011 Pickett responded to a government request for an updated financial statement, contending that no perfected judgment existed and demanding proof of the statutory authority of the request before making any disclosures. In a second letter dated April 2011, Pickett again refused to provide a financial statement.

In May 2011 the United States Department of Justice sent Pickett a second notice of intent to offset his Social Security benefits through the TOP to satisfy the full $214,444.66 in restitution owed. Pickett again responded that he did not owe any debt. The Department of Justice referred Pickett's debt to the TOP, and the monthly offset payments began in October 2011.

4

In December 2011 Pickett filed a pro se motion styled "Petition for Protection of the Court" asking the district court to enjoin the United States Department of Treasury from offsetting his Social Security benefits and to require that it return the money it had already collected through the TOP. The district court concluded that Pickett's challenges to the underlying restitution order were barred by res judicata because that issue had already been litigated many times. Alternatively, it found that Pickett's claims were without merit. Finally, the court concluded that the United States had not improperly attempted to collect restitution from Pickett because it had complied with the requirements for administrative offset under 31 U.S.C. § 3716. Accordingly, the district court denied Pickett's motion for injunctive relief. This is Pickett's appeal of that judgment.

## II.

We review the district court's denial of injunctive relief for abuse of discretion. Kidder, Peabody & Co., Inc. v. Brandt, 131 F.3d 1001, 1003 (11th Cir. 1997). We have done our best to make sense of the many arguments made in Pickett's brief, keeping in mind that we liberally construe pro se pleadings. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003).

## A.

Pickett first contends that the district court abused its discretion in denying injunctive relief because the restitution judgment itself is void, an issue that he has

already tried to litigate many times.  "Under the law of the case doctrine, an issue decided at one stage of a case is binding at later stages of the same case," unless a later trial produces substantially different evidence, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.  United States v. Escobar-Urrego, 110 F.3d 1556, 1560–61 (11th Cir. 1997).  We upheld Pickett's sentence, including the restitution judgment, on direct appeal.  That ruling is now the law of the case, and Pickett has not shown that any exception to the law of the case doctrine applies.[1]  As such, Pickett cannot now challenge the validity of the underlying restitution judgment.[2]

## B.

Pickett also contends that even if the restitution judgment is valid, the district court still abused its discretion in denying injunctive relief because the judgment is not enforceable.  He first asserts that the statute of limitations bars collection of the restitution judgment.  The United States can enforce a restitution

---

[1] To the extent that Pickett is attempting to make challenges to the validity of the restitution judgment that he failed to make on direct appeal, those challenges have been waived.  See Escobar-Urrego, 110 F.3d at 1560 (noting that when a party fails to challenge a decision in a later appeal when the opportunity existed, that decision becomes the law of the case and that party is "deemed to have waived the right to challenge that decision at a later time").

[2] Even though the district court concluded that Pickett's challenge was barred by res judicata, we may affirm for any reason supported by the record even if not relied upon by the district court.  See United States v. $121,100 in U.S. Currency, 999 F.2d 1503, 1507 (11th Cir. 1993).

6

judgment "in the manner provided for the collection and payment of fines" in 18 U.S.C. § 3613.  See United States v. Fuentes, 107 F.3d 1515, 1533 n.33 (11th Cir. 1997).  Under 18 U.S.C. § 3613(c), an order of restitution is a lien in favor of the United States, and the lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b).  18 U.S.C. § 3613(c).  The lien becomes unenforceable 20 years from the entry of judgment or 20 years after the release from imprisonment of the person, whichever is later, or upon the death of the person.  Id. at § 3613(b).

The restitution judgment against Pickett was entered in 1997, and Pickett was released from prison in 1999.  Using the later of those dates, the lien in favor of the United States remains enforceable until 2019.  Accordingly, the government may still attempt to collect on the restitution judgment.[3]

Pickett also argues that the government is estopped from collecting restitution judgment because it did not follow the procedures found in 18 U.S.C. § 3664(m).  Pickett's reliance on that section is misplaced, as it only provides that an order of restitution may be enforced by procedures set forth in certain subchapters of the statute, or by all other available and reasonable means.  18 U.S.C. § 3664(m)(1)(A).  Pickett further argues that 34 C.F.R. § 30.20 bars the use of the

---

[3] Pickett argues that the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. § 3663(f) (1991), limits the duration of restitution to the end of a defendant's term of supervised release, or five years after imprisonment.  The court, however, did not impose restitution under § 3663(f), so that section and its time limits do not apply to Pickett's restitution judgment.

TOP because the offset was not initiated within ten years after sentencing. Pickett's reliance on that regulation is also misplaced, as it addresses only the general procedure used by the Secretary of Education to collect debts by administrative offset and therefore has no applicability to this case.

Pickett asserts that the 2002 revocation of his supervised release extinguished his restitution judgment because the payment of restitution had been a special condition of his supervised release, and the district court failed to reimpose restitution when it sentenced him for violating supervised release. The restitution judgment, however, was not merely a special condition of supervised release. The actual judgment of conviction listed the restitution obligation as a discrete part of the sentence, and the separate section that imposed conditions of supervised release stated only that "[i]f this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of the supervised release." As such, Pickett's obligation to pay restitution was a term of the original sentence and not just a special condition of supervised release. The obligation to pay restitution, therefore, continued after the revocation of supervised release, and the court was not required to reimpose that obligation when it revoked his supervised release.

Pickett also asserts that the enforcement of his restitution judgment is barred by laches. To establish laches, Pickett must show that (1) there was a delay in

asserting the right or claim, (2) the delay was not excusable, and (3) the delay caused undue prejudice.  United States v. Barfield, 396 F.3d 1144, 1150 (11th Cir. 2005).  The United States is not subject to the defense of laches in enforcing its rights.  United States v. Delgado, 321 F.3d 1338, 1348–49 (11th Cir. 2003).[4] Pickett argues that even if laches does not apply to the United States, the defense of laches may still apply to "non-federals," presumably the state of Florida and Humana.  Even if this were correct, laches still does not apply because Pickett has not shown that the delay in collection was inexcusable, especially where that delay was due at least in part to Pickett's repeated attempts to avoid paying his restitution judgment by contending that the judgment is void.  Moreover, Pickett has not shown how he has suffered prejudice by not having to pay the money he has owed to the government since 1997.

Pickett further asserts that referral of the restitution debt to the TOP violates the Double Jeopardy clause because he had already had his supervised release revoked because of his failure to pay restitution.  The Double Jeopardy clause protects against the imposition of multiple criminal punishments for the same offense.  Hudson v. United States, 522 U.S. 93, 99, 118 S.Ct. 488, 493 (1997). Revocation of supervised release is only "a modification of the terms of the original sentence" and thus not a separate punishment.  See United States v.

---

[4] While there have been rare exceptions to this rule in civil cases, those exceptions have never been applied in a criminal context.  Delgado, 321 F.3d at 1349.

9

Woods, 127 F.3d 990, 992–93 (11th Cir. 1997).  The collection of the restitution judgment that was part of the original sentence also cannot constitute a separate punishment.  Pickett, therefore, has not been subject to multiple criminal punishments for the same offense.

Pickett finally asserts that the restitution judgment is unenforceable because the government's right to collect the judgment was discharged by the bankruptcy court.  Although Pickett's restitution was a debt he owed at the time he declared bankruptcy, a criminal restitution order is not dischargeable in bankruptcy.  11 U.S.C. § 523(a)(13).  Moreover there is no authority, legal or logical, to support Pickett's argument that the government's right to collect the restitution judgment was discharged by the bankruptcy court even though the actual restitution judgment was not.

## C.

Pickett further contends that even if the restitution judgment is enforceable, the district court abused its discretion in denying injunctive relief because the United States may not use the TOP to collect the amount that is owed to the State of Florida.  Federal law allows agencies, both federal and state, to refer debts to the United States Treasury Department for the purpose of collecting debts through the TOP.  31 U.S.C. § 3716.  States themselves may use the TOP to collect past due debt if the appropriate State disbursing official requests that an offset be

performed, and a reciprocal agreement with the State is in effect.  31 U.S.C. § 3716(h)(1); 31 C.F.R. § 285.6.  Pickett argues that the TOP may not be used to collect the amount owed to the state of Florida because it has not entered into a reciprocal agreement.  But this is not a situation where the state of Florida is trying to collect an administrative debt through the TOP.  Instead, the Department of Justice is using the TOP to enforce a restitution judgment entered by a federal court.  And Pickett has not offered any reason why the Department of Justice may not use the TOP to enforce a federal restitution judgment just because the victim is a state agency.

Finally, we reject Pickett's contention that he is entitled to an offset of his restitution judgment for the federal income taxes that he has paid.  Because Pickett has not shown that he is entitled to any relief, the district court did not abuse its discretion in denying Pickett's request for an injunction.

**AFFIRMED.**