JORDAN, Circuit Judge,
concurring in part and dissenting in part:
Except as to the discussion and conclusion about the calculation of loss under the Sentencing Guidelines, I join the majority opinion. With respect to loss, the issue is a close one, but on balance I conclude that the special rule set forth in Application Note 3(F)(v)(III) to U.S.S.G. § 2B1.1 does not apply under the facts presented.
In order to ensure that they have a medical need for portable oxygen, Medicare requires that patients undergo pulse oximetry testing at independent laboratories. Pulse oximetry, “a routine and noninvasive means of testing oxygen levels in the blood,” Doctors Nursing & Rehab. Ctr. v. Sebelius, 613 F.3d 672, 675 (7th Cir.2010), consists of a monitor receiving and interpreting a signal from a sensor attached to a finger or ear on the patient’s body.[1] As the majority explains, the health care fraud in this case consisted of having the pulse oximetry tests done by Mr. Bane’s own companies — not by independent laboratories — and then representing to Medicare that the testing had been performed by independent entities.
Insofar as Mr. Bane billed Medicare $69,814.14 for the pulse oximetry tests themselves, that entire sum was properly counted as loss under the Sentencing Guidelines. After all, Medicare paid for the tests believing that they had been conducted by independent laboratories. See United States v. Curran, 525 F.3d 74, 82 (1st Cir.2008) (“Thus, even supposing such services as the ‘full body assessment’ provided some naturopathic benefit, or at least were believed by some clients to have done so, no credit is available under the Guidelines for them where Curran was falsely posing to be a licensed medical doctor at the time.”).
But Mr. Bane was also held responsible under § 2B1.1 for the over $7 million billed to Medicare for the portable oxygen provided to the patients who underwent the pulse oximetry testing, and it is here that I part company with the majority. The district court found at sentencing that for 80-90% of the Medicare patients portable oxygen was medically necessary, see Sentencing Transcript at 211, and in my view the amounts billed for the portable oxygen provided to these patients must be offset (i.e., deducted) when determining loss.
*832 Application Note 3(E)(i), entitled “Credits Against Loss,” provides that “[l]oss shall be reduced by ... the fair market value of the property returned and the services rendered, by the defendant ... to the victim before the offense was detected.” Given that 80-90% of the patients had an undeniable medical need for portable oxygen — notwithstanding the fact that the pulse oximetry testing was not done by independent laboratories — it seems to me that language of Application Note 3(E)(i) applies. “Value may be rendered even amid fraudulent conduct,” United States v. Blitz, 151 F.3d 1002, 1012 (9th Cir.1998) (internal quotation marks and citation omitted), and a “straightforward application of the [Guidelines [i.e., Application Note 3(E)(i)] requires discounting the actual loss by the value of the [portable oxygen] dispensed” to those patients who needed it. United States v. Klein, 543 F.3d 206, 214 (5th Cir.2008) (holding that, even though doctor improperly billed for administration of injections that were self-administered by patients, the loss amount under the Guidelines had to be reduced by the value of the drugs themselves). See also United States v. Medina, 485 F.3d 1291, 1304 (11th Cir.2007) (concluding, in health care fraud case involving the payment of kickbacks, that loss under the Guidelines could not include amounts paid for items or services that were medically necessary).[2]
I do not think Application Note 3(F)(v)(III), which constitutes a “Special Rule,” controls with respect to the portable oxygen which the district court found was medically necessary. The portable oxygen provided to the patients did not constitute “goods for which regulatory approval by a government agency was required but not obtained.” Simply put, Medicare did not require any regulatory approval by any government agency before claims could be submitted for portable oxygen. Application Note 3(F)(v)(III) is best seen as governing special cases in which items or goods or services (e.g., drugs or medical devices) are sold or provided or placed on the market without obtaining the required prior approval of a government agency (e.g., the Food and Drug Administration). See, e.g., United States v. Goldberg, 538 F.3d 280, 290 (3rd Cir.2008) (“F.D.A. approval was required for these drugs to be sold ... There was no such approval because the drugs were misbranded. This means Goldberg was selling goods for which regulatory approval was required but not obtained.”).

. See generally Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group LP, 592 F.3d 991, 994 (9th Cir.2010); Merriam-Webster Online Medical Dictionary, www.merriam-webster.com/medical/pulse + oximetry (last visited June 18, 2013).

. Unlike the majority, I do not read our decision in Medina as merely resting on the district court’s failure to make specific findings as to loss. Although we did ultimately remand for such specific findings, we first ruled that amounts paid for items or services that were medically necessary could not be considered in determining the loss suffered by Medicare: "As to Guerra, the total amount billed to Medicare on the health care fraud claims that we affirm is only $11,820. We find these claims fraudulent not because they were based on illegitimate prescriptions, but because the patients or doctors received kickbacks after Guerra certified to Medicare that she would not pay such remunerations. There was no evidence presented that these claims were not medically necessary. Even though Tanya Moore testified that Medicare would not play a claim if [it] knew that parties were receiving kickbacks, this is not sufficient to establish a loss to Medicare." 485 F.3d at 1304 (emphasis added). Indeed, when the case came back up on appeal after remand, we cited Medina for the proposition that Ms. Guerra "did not merit any additional levels from the § 2B1.1 loss table because she was not responsible for any loss to Medicare. See Medina, 485 F.3d at 1304-05[.]" United States v. Guerra, 307 Fed.Appx. 283, 287 (11th Cir.2009) (emphasis added).