[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12991

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TIMOTHY J. SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:19-cr-00032-MCR-1

_____

Before WILLIAM PRYOR, Chief Judge, and BRASHER and ABUDU, Circuit Judges.

PER CURIAM:

This is the second occasion that Timothy Smith has challenged his conviction for extortion. 18 U.S.C. § 875(d). In his earlier appeal, we affirmed Smith's conviction for extortion, *id.*, and vacated his conviction for theft of trade secrets, *id.* § 1832(a)(1), and related sentencing enhancements for lack of venue. *United States v. Smith*, 22 F.4th 1236 (11th Cir. 2022), *aff'd*, 599 U.S. 236 (2023). On remand, the district court rejected Smith's new argument that his conviction for extortion must be vacated based on an intervening change in controlling law in *Counterman v. Colorado*, 600 U.S. 66 (2023), and resentenced Smith. On appeal from resentencing, Smith argues that we must vacate his conviction for extortion because the jury instructions failed to comport with *Counterman* and that the district court erred in ruling that our mandate rule prevented it from considering this challenge on limited remand. We affirm.

## I. BACKGROUND

The facts underlying Smith's criminal conduct are presented in detail in our earlier decision. *See Smith*, 22 F.4th at 1238–42. In that decision, we explained how Smith, a software engineer and avid angler, used a web application to access private artificial reef coordinates in the Gulf of Mexico that had been collected, processed, and offered for sale by Tristan Harper and Travis Griggs

through their business StrikeLines. After Smith informed the owners that he obtained their coordinates and the owners asked their website developer Ralph Haynes to add extra layers of security to their website, Smith posted on Facebook about possessing Strike-Lines's coordinates and invited viewers to "direct message" him about coordinates. Because Smith's posts generated complaints from customers, Griggs asked Smith to explain how he continued to access their data despite the upgraded security, but Smith refused and told Griggs that what Haynes had done with the website security was "enough to deter 99.9 percent of users." *Id.* at 1239. Smith then sent Griggs a picture revealing that Smith still could access the internal data and coordinates.

We explained in our opinion for Smith's earlier appeal how he then extorted Griggs and Harper:

> After communications about how the Facebook posts were "creating a lot of trouble" by "causing actual harm to [Strikelines's] reputation" and the owners' "livelihood," Smith told Griggs, "How about this, I'll delete the post, won't ever say anything else about it, even to those that have contacted me. I need help with one thing, though." Griggs replied, "What's that?" Smith said, "I need deep grouper numbers, div[e]able, 160 to 210. I'll also help you fix your problem free of charge. But me fixing your problem has to remain strictly between me and you, and I mean strictly." Griggs responded that if Smith deleted his Facebook posts that they might be able to talk about Smith's proposition. And Smith said, "I'll delete the

post in good faith, but I'm not sure I'm really interested in side [coding] projects. I'm really just interested in deep grouper spots. I mean, I'll listen to what you've got, though. We have a deal?" Griggs and Smith exchanged more texts about the type of grouper spots that Smith wanted, and Griggs retired from the exchange for dinner.

The next day, communications broke down, apparently because Griggs did not provide Smith with deep grouper coordinates. And because he did not receive the deep grouper numbers, Smith told Griggs that the "[p]osts are going back up." Griggs attempted to contact Smith again, but after it became clear that Smith would not cooperate, Griggs and Harper contacted law enforcement.

*Id.* at 1239–40 (alterations in original).

At trial, Smith moved for a judgment of acquittal on the extortion count based on the insufficiency of the evidence to establish that he intended to extort money or something of value. The district court denied the motion and instructed the jury that the government must prove beyond a reasonable doubt that:

> (1) the Defendant knowingly sent a message in interstate or foreign commerce containing a true threat to damage the property or reputation of another or used a facility of interstate or foreign commerce to send said threat; and

(2) the Defendant did so with the intent to extort money or something else of value to the Defendant.

Smith made no substantive objection to the instructions. The jury returned a verdict of guilty on the extortion and theft-of-trade-secrets counts.

Smith appealed and argued that insufficient evidence supported his conviction for extortion because none of his communications threatened action to damage StrikeLines's property or reputation. We disagreed because, after Griggs told Smith that his Facebook posts about possessing StrikeLines's coordinates were harming the reputation of the business and the owners' livelihoods, Smith agreed to take the posts down in exchange for deep grouper numbers, and when Griggs did not deliver those numbers within a day, Smith said that the "deal [was] off" and the "[p]osts [were] going back up" because Griggs "didn't follow through." *See id.* at 1245. We vacated Smith's conviction for theft of trade secrets for improper venue without prejudice to the authority of the government to prosecute Smith in a proper venue, and we remanded "to the district court for resentencing only on [the extortion count]." *Id.* at 1246.

After we issued our mandate, Smith petitioned for a writ of certiorari on the issue whether vacatur for lack of venue bars retrial of a defendant in the proper venue. The Supreme Court affirmed. It held that Smith could be retried for theft of trade secrets in the proper venue. *Smith*, 599 U.S. at 239, 254.

On remand for resentencing, Smith again challenged his conviction for extortion. He argued that the district court should vacate his conviction in the light of *Counterman* because the jury instructions omitted a *mens rea* element of the offense, namely "a showing of [Smith's] subjective awareness that his statements constituted a true threat." He argued that under *Counterman* the jury could convict him only if it found that he at least "was reckless as to whether his statement would be perceived as a true threat."

The district court ruled that the mandate rule barred Smith's challenge to his conviction for extortion and that *Counterman* did not apply to the extortion statute, 18 U.S.C. § 875(d). The district court sentenced Smith to four months of imprisonment followed by one year of supervised release, the first four months of which must be served under home detention.

## II. STANDARD OF REVIEW

We review *de novo* whether the law-of-the-case doctrine barred Smith from relitigating his conviction for extortion. *See United States v. Green*, 764 F.3d 1352, 1355 (11th Cir. 2014).

## III. DISCUSSION

Smith argues that we must vacate his only remaining conviction because the jury instructions were plainly erroneous in the light of *Counterman*. He argues that under *Counterman* the government failed to prove "any awareness on [Smith's] part that [his] statements could be understood" as true threats. And he argues that our mandate rule did not prohibit the district court from

considering this argument because *Counterman* is an intervening change in controlling law. We disagree.

The mandate rule is a case-specific application of the law-of-the-case doctrine. *United States v. Amedeo*, 487 F.3d 823, 830 (11th Cir. 2007). The doctrine "operates to create efficiency, finality, and obedience within the judicial system." *Id.* (alteration adopted). When a district court acts under a mandate from an appellate court, it "cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal." *United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996). Indeed, ruling on matters beyond the scope of a limited mandate is an abuse of discretion. *Id.*

The exceptions to the mandate rule require new evidence, an intervening change in controlling law, or a clearly erroneous decision that would cause manifest injustice. *United States v. Escobar-Urrego*, 110 F.3d 1556, 1561 (11th Cir. 1997). Smith contends that *Counterman* qualifies as an intervening change in controlling law. But "[n]ot just any change in law qualifies as an exception to the law of the case doctrine." *United States v. Stein*, 964 F.3d 1313, 1325 (11th Cir. 2020). Instead, we "demand an intervening change in the controlling law that dictates a different result." *See id.* (quotation marks omitted) (rejecting the defendant's argument on appeal from resentencing that *Honeycutt v. United States*, 581 U.S. 443 (2017), was an intervening change in controlling law that qualified as an exception to the mandate rule where that decision considered

the text of a statute that lacked the statutory features at issue in the defendant's appeal).

In *Counterman*, the Supreme Court reviewed a state statute, COLO. REV. STAT. § 18-3-602(1)(c) (2022), that prohibited making any form of communication "in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person . . . to suffer serious emotional distress" but did not require "any kind of subjective intent to threaten." 600 U.S. at 71 (quotation marks omitted). The Court ruled that the statute violated the First Amendment because, without proof of a defendant's subjective intent, prosecutions might "chill too much protected, non-threatening expression." *Id*. at 77–78, 82. It held that for "[t]rue threats of violence" the State must prove that the defendant was aware of the threatening nature of the statement with a *mens rea* of at least recklessness, that is, that he "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id*. at 69, 72–73.

The district court did not err in ruling that Smith's challenge to his conviction for extortion was barred by the mandate rule. In our earlier decision, we ruled that sufficient evidence supported the conviction. *Smith*, 22 F.4th at 1245. We remanded "to the district court for resentencing only on [the extortion count]." *Id*. at 1246. The district court correctly refused to assert jurisdiction "over matters outside the scope of [our] limited mandate" in rejecting Smith's second challenge to his conviction. *Tamayo*, 80 F.3d at 1520.

*Counterman* does not dictate a different result. *See Stein*, 964 F.3d at 1325. No jury could have found that Smith made his communications with the *purpose* of extorting a thing of value from StrikeLines without necessarily finding that Smith was at least reckless as to whether the owners reasonably would view his statements as a threat. Indeed, Smith could not have acted with the purpose of extorting grouper numbers from Griggs without subjectively believing that Griggs would understand that he and Harper must provide the grouper numbers to Smith to prevent further harm to the reputation of their business and livelihood. Because Smith's liability for extortion turned on a finding that he acted with more than the *mens rea* of recklessness that *Counterman* requires in true-threats cases, *Counterman* is not an intervening change in law that dictates a different result. *See* 600 U.S. at 69, 72–73; *Stein*, 964 F.3d at 1325.

## IV. CONCLUSION

We **AFFIRM** Smith's sentence and **DENY AS MOOT** his motion to withdraw his earlier motion for release pending appeal.