**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12676

Non-Argument Calendar

_____

HARRIUS JOHNSON,

*Plaintiff-Appellant,*

*versus*

MIAMI-DADE COUNTY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:16-cv-21658-KMW

_____

Before JORDAN, KIDD, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Harrius Johnson, an African American male police officer, was disciplined and eventually terminated by the Miami-Dade County Police Department ("MDPD"). He sued Miami-Dade

County ("the County"), claiming that the real reasons for his discipline and termination were racial discrimination and retaliation. The District Court granted summary judgment in favor of the County, and Johnson appealed to this Court. We reviewed his appeal and remanded to the District Court to reconsider Johnson's argument in light of our decision in *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc). The District Court applied *Lewis* and affirmed its original grant of summary judgment for the County. Johnson now appeals that decision. We affirm.

## I. BACKGROUND

This matter comes before us a second time after a remand to the District Court. Since we have already set out the factual background underlying this appeal, we do not reproduce it here. *See Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1323–25 (11th Cir. 2020). Instead, we offer a summary of the procedural history of this case.

In July of 2016, Johnson, represented by counsel, filed an Amended Complaint against the County alleging, among other things, discrimination and retaliation in violation of 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Florida Civil Rights Act of 1992 ("FCRA").[1] After discovery, Johnson and the County filed cross motions for summary judgment. The District Court granted the County's motion and denied Johnson's. It analyzed both the discrimination and retaliation claims under the framework set forth in *McDonnell Douglas Corp. v.*

---

[1] Johnson also alleged violations of the Fair Labor Standards Act ("FLSA"). The FLSA claims were resolved prior to the initial grant of summary judgment.

*Green*, 411 U.S. 792, 802–03 (1973), noting that the same analysis applies for § 1983, Title VII, and FCRA claims.[2]

In granting summary judgment to the County, the District Court began by assuming that Johnson could make the requisite prima facie cases. It then listed the County's proffered legitimate, nondiscriminatory reasons for Johnson's termination. According to the County, Johnson was "terminated because of his disrespectful, insubordinate, unprofessional, discourteous, and unbecoming conduct towards co-workers and superiors, coupled with his disciplinary history." *See* Doc. 98 at 11. The Court reasoned that because the County proffered legitimate reasons for its actions, the viability of Johnson's discrimination and retaliation claims depended on whether he could raise a genuine dispute of material fact that the County's proffered reasons were pretextual.

---

[2] We affirmed that conclusion in the original appeal:

> [W]hen, as here, a plaintiff attempts to use Title VII and 42 U.S.C. § 1983 as parallel remedies for the same allegedly unlawful employment discrimination, the elements of the two causes of action are identical, *Cross v. Alabama*, 49 F.3d 1490, 1508 (11th Cir. 1995), and identical methods of proof, such as the *McDonnell Douglas* framework, are used for both causes of action, *Richardson*, 71 F.3d at 805. And because the FCRA is based on Title VII, decisions construing Title VII apply to the analysis of FCRA claims. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387, 1389–90 (11th Cir. 1998). Therefore, all of Johnson's claims are governed by the *McDonnell Douglas* framework.

*Johnson*, 948 F.3d at 1325.

Johnson made two arguments to establish pretext. First, he argued that he was treated worse than similarly situated, non-African American employees. Second, he argued that his complaints of discrimination were not seriously investigated. But, the District Court found that Johnson failed to show pretext because neither argument was supported by the record. Thus, the Court concluded that "even if [it] accept[ed] that [Johnson] ha[d] satisfied the first step of the *McDonnell Douglas* framework, summary judgment in favor of [the County was] still appropriate" because "[Johnson] ha[d] not presented sufficient evidence to create a genuine issue of material fact regarding whether the City's proffered non-discriminatory reasons for [his] suspension and termination were pretextual." Doc. 98 at 11.

Johnson, still represented by counsel, appealed to this Court, arguing that he had presented sufficient evidence of pretext to satisfy *McDonnell Douglas* and that he had presented a convincing mosaic from which a reasonable jury could infer intentional discrimination and retaliation.

After full briefing and oral argument, this Court rendered its decision affirming in part, vacating in part, and remanding for reconsideration by the District Court. *Johnson*, 948 F.3d at 1330. Specifically, we agreed with the District Court that Johnson failed to provide evidence of pretext for retaliation based on MDPD's refusal to investigate his complaints. Therefore, we concluded that Johnson's only viable pretext argument rested with his comparator evidence. *Id* at 1327–29. However, in the time between the District Court's summary judgment decision and Johnson's first appeal, our

24-12676                 Opinion of the Court                        5

Court clarified the standard for evaluating whether a plaintiff's proposed comparators satisfy the "similarly situated" element of the prima facie case for discrimination. *See Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc).[3] We remanded to the District Court to reconsider Johnson's comparator evidence in light of the new standard. *Id.* at 1326.

On remand, the District Court considered supplemental briefing on the comparator issue and individually evaluated each of Johnson's proposed comparators under the *Lewis* standard. It ultimately concluded that "even under the clarified standard set forth in *Lewis*, Mr. Johnson still cannot establish that the County's proffered reasons for taking various adverse actions against him were mere pretext for unlawful discrimination and retaliation." Doc. 126 at 4. It therefore affirmed its original grant of summary judgment in favor of the County. Johnson, who is now proceeding pro se, filed this timely appeal.[4]

---

[3] In *Lewis*, 913 F.3d at 1224, we clarified that employment discrimination plaintiffs need not show that their comparators are "nearly identical" or the "same or similar" to them. Rather, they need only show that their comparators are "similarly situated in all material respects." *Id*.

[4] Shortly after the District Court's grant of summary judgment on remand, Johnson's attorney moved to withdraw as counsel, citing "irreconcilable differences" and noting that Johnson did not object to his withdrawal. The District Court granted the motion.

## II. DISCUSSION

We review the District Court's grant of summary judgment de novo. *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016). All reasonable inferences must be drawn in favor of the nonmoving party, but a "mere scintilla of evidence . . . will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

After the District Court granted summary judgment the second time, we issued our decision in *Ismael v. Roundtree*, 161 F.4th 752, 755 (11th Cir. 2025). There, we clarified that a § 1983 or Title VII plaintiff's failure to demonstrate pretext does not automatically entitle the defendant to summary judgment. *See id.* at 761–63. It appears that the District Court erroneously believed that Johnson's failure to evince pretext doomed his discrimination and retaliation claims. Though the Court's analysis was incomplete, the County is entitled to summary judgment nonetheless. Since we review the

District Court's decision de novo, we now model the analysis as our circuit has come to understand it.

## A. Discrimination

We begin with Johnson's discrimination claim. Because Johnson does not argue that there is direct evidence of discrimination, we proceed to analyze his claim under the *McDonnell Douglas* framework.[5]

The first step under that framework is to consider whether the plaintiff can establish a prima facie case for discrimination. *See Ismael*, 161 F.4th at 764. The term "prima facie case" can be misleading in this context because it is not a "substantive standard of liability." *See Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944–45 (11th Cir. 2023). Rather, the plaintiff's establishment of the prima facie case under *McDonnell Douglas* entitles her to a "legally mandatory, rebuttable presumption" of illicit intent. *Id.* at 945 (internal quotation marks and citation omitted). But the failure to make the prima

---

[5] "Direct evidence is evidence that, if believed, proves the existence of discriminatory intent without inference or presumption." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (internal quotation marks and brackets omitted). We have held that "[w]hen a plaintiff proves a case of discrimination by direct evidence, application of *McDonnell Douglas* is inappropriate, and the district court may not grant summary judgment . . . even where the movant presents conflicting evidence[.]" *Id.* at 922 (internal quotation marks and citations omitted).

facie case does not automatically entitle the defendant to summary judgment. *See Ismael*, 161 F.4th at 765.

A plaintiff establishes the prima facie case "by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis*, 918 F.3d at 1220–21.

If the plaintiff fails to make the prima facie case, then she "must produce enough evidence, on her own and without any helpful evidentiary burdens or presumptions, to demonstrate" that a reasonable jury could conclude that she was subjected to adverse employment action because of her race, color, religion, sex, or national origin. *Ismael*, 161 F.4th at 765. *Accord Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("[T]he plaintiff's failure to produce a comparator does not necessarily doom [her] case. . . . [T]he plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.").

But if the plaintiff succeeds in making the prima facie case, then she is entitled to "a rebuttable presumption of illicit intent," *Ismael*, 161 F.4th at 764, and the court proceeds to the second step of the *McDonnell Douglas* framework.

In the second step, the court considers whether the defendant has produced evidence of a legitimate, nondiscriminatory reason for the adverse action. *Id.* at 759. Because the plaintiff's establishment of the prima facie case creates a rebuttable presumption

of illicit intent, the defendant's failure to rebut that presumption with a legitimate, nondiscriminatory reason for the adverse employment action would entitle the plaintiff to summary judgment on liability. *Id.* at 764. If, on the other hand, the defendant produces evidence of a legitimate, nondiscriminatory reason for the adverse action, the presumption of illicit intent is rebutted, and the court must proceed to the third step.

Next, the court must determine "whether 'the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination [or retaliation] by the decisionmaker.'" *Id.* (quoting *Smith*, 644 F.3d at 1328). While evidence that the defendant's explanation is pretextual may be sufficient to survive summary judgment, it is not necessary. *Id.* ("A showing of pretext (or lack thereof) would certainly be relevant. But a plaintiff's inability to disprove the defendant's rationale cannot be the sole grounds for summary judgment.").

We begin our analysis of Johnson's discrimination claims by asking whether he established the prima facie case. Since Johnson's failure to establish any of the four elements dooms his prima facie case, we begin with the fourth element, which requires Johnson to show that MDPD treated "similarly situated" employees outside Johnson's class more favorably than him—we call this the comparator analysis. Proposed comparators are "similarly situated" within the meaning of this framework if they are "similarly situated in all material respects." *Lewis*, 918 F.3d at 1229. Although there is no bright-line rule for what constitutes a valid comparator, *Lewis* tells

us that a valid comparator is ordinarily someone who: (1) has engaged in the same basic conduct (or misconduct) as the plaintiff, (2) is subject to the same employment policy, guideline, or rule as the plaintiff, (3) is under the jurisdiction of the same supervisor as the plaintiff, and (4) shares the plaintiff's employment or disciplinary history. *Id.* at 1227–28. This is not a checklist that a valid comparator must satisfy, but rather, a helpful guideline for answering the ultimate question: Are the plaintiff and her comparators similar enough that they "cannot reasonably be distinguished"? *Id.* at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 209, 135 S. Ct. 1338, 1343 (2015)).

Johnson proposed ten individuals as potential comparators.[6] The District Court individually analyzed each comparator under the *Lewis* standard and found that "the record does not support a finding that any of Mr. Johnson's proposed comparators were similarly situated in all material respects" because "the proposed com-

---

[6] Johnson cites his own declaration in support of his motion for summary judgment as the factual basis for the alleged similarities with these individuals. The District Court noted, and we agree, that many of the statements in Johnson's declaration would not clear the Rule 56(c)(4) requirement that a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). However, we also agree with the District Court's conclusion that even taking the declaration as true, Johnson cannot show that any of his comparators are similarly situated in all material respects.

parators did not engage in the same basic misconduct as Mr. Johnson and/or did not share the same disciplinary history as Mr. Johnson." Doc. 126 at 10–11.

We agree. Johnson was terminated after being subject to five disciplinary actions in two and a half years, resulting in one Record of Counseling ("ROC") and four Disciplinary Action Reports ("DARs"). The conduct that led to Johnson's termination involved violating MDPD's rules for maintaining an accurate home address, insubordination, disrespect, unprofessionalism, and conduct unbecoming a county employee.

Based on Johnson's own declaration, five of his comparators have no ROCs or DARs. Of the other five, the comparator with the most disciplinary actions on his record has one ROC and two DARs. However, that comparator's misconduct involved falsifying time records, deactivating his GPS device during shifts, and submitting late reports. There is nothing in Johnson's declaration that indicates any of his ten comparators engaged in insubordination or disrespect for the chain of command. While some of the comparators appear to have engaged in unprofessionalism and conduct unbecoming a county employee, none shared Johnson's extensive disciplinary history.

Johnson's arguments to the contrary are unavailing.  He emphasizes that he and his comparators are sufficiently similar because, for example, they were governed by the same rules and procedures and they shared the same director. But at the prima-facie step, the fact that there are some similarities between the plaintiff and the comparator is not enough. They must be similarly situated

"in all material respects." *Lewis*, 918 F.3d at 1224. Here, the comparators are not so situated because they had materially different disciplinary records from Johnson's.

We conclude that Johnson was unable to point to a comparator with whom he was similarly situated in all material respects. Therefore, Johnson cannot make a prima facie case for discrimination. The result of that failure is that Johnson does not enjoy the benefit of a presumption of intentional discrimination. *See Ismael*, 161 F.4th at 765. Instead, he must demonstrate a material issue of triable fact by constructing "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith*, 644 F.3d at 1328.

As the mosaic analogy implies, circumstantial evidence of discrimination comes in many forms—each image of discrimination is composed of irregular tiles, unique in size, shape, and color. To provide some guidance to District Courts,

> we have identified three nonexclusive categories of circumstantial evidence that can raise a reasonable inference of unlawful conduct: evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent may be inferred; evidence of systematically better treatment of similarly situated employees; or evidence that the employer's justification for its action is pretextual.

*Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023).

Johnson states that his evidence supporting an inference of discrimination includes "internal affairs reports, deposition testimonies, and comparator evidence." Appellant's Br. at 14. But, upon

review of his brief, it is clear that Johnson's discrimination claim rests squarely on his argument that similarly situated employees systematically received better treatment than him.

Here, we highlight a subtle yet crucial point. The requirement that comparators be "similarly situated in all material respects," *Lewis*, 918 F.3d at 1218, only applies at step one of the *McDonnell Douglas* framework—when the plaintiff is attempting to establish a presumption of illicit intent. *See id.* at 1221–24 (holding that the qualitative assessment of comparator evidence must be conducted at the prima facie stage of the *McDonnell Douglas* framework). After the plaintiff has failed to establish the presumption, or the defendant has successfully rebutted the presumption, the sole question is whether the record, viewed in the light most favorable to the plaintiff, would allow a jury to infer discriminatory or retaliatory intent. To answer that question, a district court should consider the record as a whole, including all evidence of disparate treatment, even if there are material differences between the plaintiff and the comparators. At this stage in the analysis, the extent of the material differences only influences "how much weight the comparator evidence should be given." *See Tynes*, 88 F.4th at 947. The failure to meet the *Lewis* standard does not render comparator evidence irrelevant to the ultimate summary judgment inquiry. *See id.* ("[I]t is possible that [plaintiff's] comparators were insufficient to establish a prima facie case yet still relevant to the ultimate question of intentional discrimination.").

Thus, our conclusion that Johnson's comparators do not meet the *Lewis* standard at step one does not foreclose his argument

that his comparators contribute to a convincing mosaic of discrimination. However, Johnson's convincing mosaic argument fails because his comparators are the *only* evidence of discrimination he points to. In this case, Johnson's distinguishable comparators, standing alone, do not raise a reasonable inference of unlawful conduct. Thus, Johnson has not presented evidence that would allow a jury to infer intentional discrimination, and summary judgment for the County is appropriate.

## B. Retaliation

Next, we turn to Johnson's retaliation claims. The burden-shifting framework for summary judgment on a retaliation claim is the same as for a discrimination claim, with the caveat that the prima facie case for retaliation is different than that for discrimination. To make a prima facie case for retaliation, a plaintiff must show "[(1)] that she engaged in a protected activity, like filing a complaint for discrimination; [(2)] that she suffered a material adverse action; and [(3)] that there was a causal connection between the protected activity and the adverse action." *Ismael*, 161 F.4th at 759.

For the sake of brevity, we assume Johnson has made a prima facie case for retaliation on at least one set of allegations. Based on that assumption, we presume retaliatory intent and consider whether the County rebutted that presumption. Given Johnson's disciplinary history, the County has provided a legitimate, nonretaliatory reason for his suspensions and termination.

So, because the County has rebutted the presumption of retaliatory intent, Johnson's only chance to prevail on his retaliation claim is to either cast doubt on the County's legitimate, nonretaliatory reason, or otherwise present a record of evidence from which a reasonable jury could infer a retaliatory motive. To that end, Johnson points to evidence falling into two general categories: suspicious timing and inconsistent explanations for adverse actions by the County.

First, Johnson argues that his "protected activities, including filing multiple EEOC complaints . . . directly triggered a series of adverse employment actions culminating in his termination." Appellant's Br. at 58. The record shows that the shortest gap between any EEOC complaints and disciplinary actions was about two months.

This evidence, standing alone, fails to support a reasonable inference of retaliatory intent because two months between an EEOC complaint and discipline is too long to call the County's explanations for the discipline into question. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (reasoning that a less than two-week gap between the protected activity and adverse employment action was "probably insufficient to establish pretext by itself").

Johnson also asserts that "there is no factual basis" for the DARs issued by Captain White, and "a reasonable jury could infer that the reason White falsified the disciplinary report[s] against [him] was retaliation for the EEOC complaints." Appellant's Br. at 25. But Johnson points to no evidence from which a jury could infer

that the DARs were falsified. He argues that MDPD procedures require a complete investigation, which did not occur, and White's allegations were uncorroborated because MDPD failed to interview two Lieutenants. But even if those assertions are true, they do not suggest that the DARs were falsified. In this lawsuit, the burden is on Johnson to come forward with evidence—not speculation or conjecture—from which a jury could conclude that the County retaliated against him for engaging in protected activity. He has not identified any such evidence.

Next, Johnson points to "inconsistencies in the [County's] explanations for the adverse actions taken against [him]" as evidence of MDPD's retaliatory motives. Appellant's Br. at 59. His argument goes as follows. The two DARs issued by White were the last two Johnson received before his termination. In deciding to terminate Johnson in 2016, Director Patterson considered the DARs issued by White and Johnson's prior disciplinary record. But Patterson testified in a deposition that "as of . . . March 8, 2019," he did not trust White, who was later terminated himself. Doc. 143-1 at 11. To Johnson, this shows that Patterson "knowingly relied on false testimony from Captain White." Appellant's Br. at 13. That, too, is unsupported conjecture. A reasonable jury could not infer from the fact that Patterson did not trust White in 2019 that he knew White falsified a report in 2016. And to reiterate, there is no evidence that White falsified anything.

Considered cumulatively and in a favorable light, Johnson's shards of evidence do not come together to produce an image of retaliation. Thus, he has failed to raise a genuine issue as to the fact

24-12676                Opinion of the Court                17

of illicit intent, and summary judgment in favor of the County is appropriate.

## C. Other Claims on Appeal

Finally, in this appeal Johnson argues that the District Court "erred in its evidentiary rulings, . . . and denied [his] due process rights by limiting discovery and denying reconsideration." Appellant's Br. at 17. Johnson had the opportunity to challenge the District Court's evidentiary and discovery decisions in his first appeal. Thus, any challenges Johnson now raises regarding the District Court's discovery and evidentiary orders have either already been decided or waived as a consequence of the law-of-the-case doctrine. *See United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("The law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case."); *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) ("[A] legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." (internal quotation marks omitted)). We will not review the District Court's pre-remand decisions, which we have already reviewed, or which Johnson now challenges for the first time.

18                    Opinion of the Court                    24-12676

### III. CONCLUSION

Given the foregoing analysis, we affirm the District Court's grant of summary judgment in favor of the County.[7]

**AFFIRMED.**

---

[7] Johnson's Emergency Motion to Supplement the Record, Emergency Motion for Reinstatement and Resumption of Duty, Motion for Sanctions and Criminal Referral, Motion to Vacate Prior and Present Judgments, and Motion to Take Judicial Notice are denied.